IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 10–cv–02495–PAB–KMT

HILDA M., a/k/a HILDY, FEUERBACH, as Personal Representative of the Estates of Parker W. Lofgren, deceased, and Caroline F. Lofgren, deceased,
JEAN RITTENOUR, as co-Personal Representative of the Estates of Owen P. Lofgren, deceased, and Sophie J. Lofgren, deceased,
FREDERICK J. FEUERBACH, JR., as co-Personal Representative of the Estates of Owen P. Lofgren, deceased, and Sophie J. Lofgren, deceased,
JEAN RITTENOUR, individually, and
FREDERICK J. FEUERBACK, JR., individually,

    Plaintiffs,

v.

MARLIN W. BROWN,
ROARING FORK PLUMBING AND HEATING COMPANY, a Colorado corporation,
BLACK DIAMOND LAND DEVELOPMENT CORPORATION, a Colorado corporation,
JONATHAN M. THOMAS,
INTEGRITY CONSTRUCTION MANAGEMENT GROUP, LLC, a/k/a ICM GROUP, LLC, a Colorado Limited Liability Company,
JOHN H. WHEELER,
EAGLE AIR SYSTEMS, INC., a Colorado corporation,
PROGUARD PROTECTION SERVICES, INC., a Colorado corporation,
PRECISION MECHANICAL, INC., a Colorado corporation,
MYERS ENTERPRISES, LLC, a Colorado limited liability company,
HEAT TRANSFER PRODUCTS, INC., a Massachusetts corporation,
ERIK PELTONEN,
BRIAN PAWL,
PITKIN COUNTY COMMUNITY DEVELOPMENT DEPARTMENT, and
BOARD OF COUNTY COMMISSIONERS OF PITKIN COUNTY, COLORADO,

    Defendants.

**ORDER**

This matter is before the court on "Defendants Marlin W. Brown and Roaring Fork Plumbing and Heating Company's Motion for Partial Stay of Proceedings and Motion for Protective Order" (Doc. No. 46 ["Mot."]) filed November 17, 2010. Plaintiff's filed their response on December 2, 2010. (Doc. No. 56 [Pls.' Resp.].) Defendants Black Diamond Land Development Corporation ("Black Diamond") and Jonathan M. Thomas filed their response on December 2, 2010. (Doc. No. 55 ["Black Diamond's Resp."].) Defendant Heat Transfer Products, Inc. ("HTP") filed its response on December 14, 2010. (Doc. No. 61 [HTP's Resp.].) Defendants Marlin W. Brown ("Brown") and Roaring Fork Plumbing and Heating Company ("Roaring Fork") filed their reply on December 14, 2010. (Doc. No. 62 ["Reply"].) The Motion is now ripe for its review and order.

This matter involves Plaintiffs' claims and allegations against the Defendants resulting from the death of the Lofgren Family on or about November 27, 2008, as the result of carbon monoxide poisoning. (*See* Plaintiffs' Second Amended Complaint, ¶¶ 1-2.) Plaintiffs allege that Defendants Roaring Fork and Brown improperly performed work on a boiler at the residence in Aspen, Colorado, in which the Lofgren family was staying, and that this work caused or contributed to their deaths. (*See* Plaintiffs' Second Amended Complaint, ¶¶ 2, 87, 180, 189.)

As the result of the alleged incidents giving rise to Plaintiffs' Complaint, Defendant Brown was indicted by a Pitkin County, Colorado, grand jury on July 22, 2010, and has been criminally charged with four felony counts of negligent homicide, as well as misdemeanor counts of reckless endangerment in the Pitkin County, Colorado, District Court. Additionally, the building inspectors, Defendants Peltonen and Pawl, have also been criminally charged in

Pitkin County, Colorado. The criminal matter is ongoing and has not yet been scheduled for trial in the Pitkin County, Colorado, District Court. Defendant Brown is now simultaneously facing criminal charges in the Pitkin County, Colorado, District Court along with these related allegations in this civil action. Defendants Brown and Roaring Fork move for a partial stay of this civil action and for a protective order pending resolution of the criminal case. Defendants Brown and Roaring Fork argue that without a stay Defendants will be forced to choose between waiving Fifth Amendment protections and privileges and responding to the allegations in this civil action (thereby risking self incrimination), or invoking the privilege and facing the possibility of a default or an "adverse inference" in this civil case. Additionally, Defendants Brown and Roaring Fork argue that the denial of a stay in this action would extend discovery available in this civil case to the prosecution in the criminal action beyond the limits set forth in the Colorado Rules of Criminal Procedure, expose the defense's theories of the case to the prosecution in advance of the criminal trial, and otherwise prejudice Defendants in the criminal case.

Defendants Black Diamond and Thomas do not oppose the relief sought in the motion for a partial stay. However, Defendants Black Diamond and Thomas request that all discovery be stayed as to the alleged liability of all of the defendants until the criminal proceeding is resolved. (Black Diamond's Resp. at 2.) Defendant HTP also requests a stay as to all defendants in this matter. (HTP's Resp. at 2.) Defendants Black Diamond, Thomas, and HTP each argue they would be prejudiced in this case if they were forced to defend against Plaintiffs' allegations

without the benefit of discovery from those defendants they allege to be the principal wrongdoers–Defendants Brown and Roaring Fork.

## ANALYSIS

The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance. *Kansas City Southern Ry. Co. v. United States*, 282 U.S. 760, 763 (1931).

In assessing the propriety of a stay, this court must consider: whether the movant is likely to prevail in the related proceeding; whether, absent a stay, any party will suffer substantial or irreparable harm; and the public interests at stake. *Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *United Steelworkers of America v. Oregon Steel Mills, Inc.,* 322 F.3d 1222, 1227 (10th Cir. 2003); *Battle v. Anderson*, 564 F.2d 388, 397 (10th Cir. 1977).

When considering a stay in a matter involving parallel criminal and civil proceedings, the primary debate centers on the criminal defendant's potential waiver or invocation of his Fifth Amendment rights. "The Constitution [ ] does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." *Securities Exchange Commission v. Dresser Industries Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 317–19 (1976)). The *Dresser* court stated, "a court may decide in its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions when the interests of justice seem to require such action." *Id.* at 1375 (internal quotation omitted). *See*

*also United States v. Kordel*, 397 U.S. 1, 11–12 (1970) (parallel civil and criminal actions might, in "special circumstances," raise constitutional problems and a defendant might be able to argue that his due process and self-incrimination rights require the stay of proceedings in the civil action).

In *Cruz v. County of Dupage*, 1997 WL 370194, at *1 (N.D. Ill. June 27, 1997), the court aptly observed the "ultimate question . . . is whether the court should exercise its discretion in order to avoid placing the defendants in the position of having to choose between risking a loss in their civil cases by invoking their Fifth Amendment rights, or risking conviction in their criminal cases by waiving their Fifth Amendment rights and testifying in the civil proceedings." In the view of the Cruz court, the "severe burden" defendants would face in fighting both proceedings simultaneously outweighed the potential prejudice to the private plaintiffs arising from a stay. *Id.*; *see also Brumfield v. Shelton*, 727 F. Supp. 282, 284 (E.D. La.1989) ("In a case where there is a real and appreciable risk of self-incrimination, an appropriate remedy would be a protective order postponing civil discovery until termination of the criminal action."); *Brock v. Tolkow*, 109 F.R.D. 116, 120 (E.D.N.Y.1985) ("A stay of civil discovery until after criminal proceedings are complete will enable [defendants] to defend the civil case vigorously without fear of subsequent prosecution").

In terms of the quandary Defendant encounters, the court notes at the outset that it is not unconstitutional to force a defendant to make this choice. *In re CFS-Related Securities Fraud Litigation*, 256 F. Supp. 2d 1227, 1236 (N.D. Okla. 2003). Balanced against the possible constitutional dilemma faced by Defendant is that "[t]he right to proceed in court should not be

denied except under the most extreme circumstances." *Commodity Futures Trading Com'n v. Chilcott Portfolio Management, Inc.,* 713 F.2d 1477, 1484 (10th Cir. 1983) (*quoting Klein v. Adams & Peck,* 436 F.2d 337, 339 (2d Cir. 1971). In other words, stays of the normal proceedings of a court should be the exception rather than the rule. *See, e.g., Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995); *In re Par Pharmaceutical Inc.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990).

In determining whether to stay civil proceedings, courts balance the burden of proceeding with both cases simultaneously against the harm to the civil opponent, in this case the plaintiffs, if a stay were granted. *See* Judge Milton Pollack, Presentation at the Transferee Judges' Conference, PARALLEL CIVIL AND CRIMINAL PROCEEDINGS, 129 F.R.D. 201, 203 (1989). A motion for a stay entails a case-by-case, fact-specific inquiry, with courts frequently citing some combination of six factors in determining whether to enter a civil stay: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest. *See Transworld*, 886 F. Supp. at 1139; *see also In Re Worldcom, Inc. Securities Litigation*, 2002 WL 31729501 (S.D.N.Y. Dec. 5, 2002); *County of Dupage*, 1997 WL 370194, at \*2; *Digital Equip. Corp. v. Currie Enterprises*, 142 F.R.D. 8, 12 (D. Mass. 1991);*White v. Mapco Gas Products Inc.*, 116 F.R.D. 498, 502 (E.D. Ark. 1987).)

### A.     *Overlap of Issues*

The extent of overlap is the "most important factor in ruling on a motion to stay." *S.E.C. v. Nicholas*, 569 F. Supp.2d 1065, 1070 (C.D. Cal.2008) (citing Milton Pollack, PARALLEL CIVIL AND CRIMINAL PROCEEDINGS, 129 F.R.D. at 203).  Plaintiffs do not dispute that there is a basic overlap between the civil and criminal proceedings.  (Pls.' Resp. at 3.)  Rather, Plaintiffs argue that "the overall civil litigation involves far more claims of wrongdoing against a vaster array of defendants that does the criminal action." (*Id.*)  However, in light of the fact that the primary wrongful conduct alleged in both the criminal and civil cases is that the defendants' work at the Aspen residence allegedly caused or contributed to the deaths of the Lofgren family members, this factor heavily weighs in favor of a stay.

### B.     *Status of Case*

Defendant Brown and the building inspectors, Defendants Peltonen and Pawl, have already been criminally charged in the state court system.  "A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations." *Transworld*, 866 F. Supp. at 1139 (internal citations omitted).  Indeed, the fact that indictments have been returned is critical because it dictates both the degree of risk of self-incrimination and the length of potential delay to the civil case.

> The strongest case for a stay of discovery in the civil case occurs during a criminal prosecution after an indictment is returned. The potential for self-incrimination is greatest during this stage, and the potential harm to civil litigants arising from delaying them is reduced due to the promise of a fairly quick resolution of the criminal case under the Speedy Trial Act.

*Dresser*, 628 F.2d at 1375-76. Numerous courts, including the Southern District of New York in the *Worldcom* civil litigation, have granted civil stays in the post-indictment context. *In Re Worldcom, Inc.*, 2002 WL 31729501, at *9; *Colmar Distributors Inc. v. New York Post Co. Inc.*, 152 F.R.D. 36 (S.D.N.Y. 1993); *Midas International Corp. v. CV&G Trans. Services,* 1987 WL 18916 (N.D. Ill. Oct. 19, 1987); *Fidelity Funding of California v. Reinhold,* 190 F.R.D. 45, 48 (E.D.N.Y. 1997) (staying the civil case against the defendant who was under indictment while denying a stay as to his unindicted civil co-defendant); *Gala Enterprise Inc. v. Hewlett Packard Co.*, 1996 WL 732636, at *2 (S.D.N.Y. Dec. 20, 1996) ("Pre-indictment requests of a stay of civil proceedings are generally denied"). This factor weighs heavily in favor of a stay as to the defendants who have been criminally charged.

As to Defendant Roaring Fork, it is well settled that a corporate defendant may not assert the Fifth Amendment privilege against self incrimination. *See Braswell v. United States*, 487 U.S. 99, 102 (1988). However, "a corporation nevertheless may be the unintended beneficiary of a corporate employee's personal invocation of the fifth amendment privilege." *Admiral Ins. Co. v. United States District Court*, 881 F.2d 1486, 1495 n.8 (9th Cir. 1989). In particular, Fifth Amendment protection may in effect be extended to corporate defendants where its individual representatives may be implicated in the alleged wrongdoing. *See Paul Harrigan & Sons, Inc. v. Enterprise Animal Oil Co.*, 14 F.R.D. 333, 334-35 (E.D.P.A.1953). In *Paul Harrigan*, the court

noted that the information sought in the case was in the knowledge of officers who had been indicted individually and all officers authorized to answer interrogatories had also been indicted individually. *See id.* at 334. The court held that compelling discovery under the circumstances would contravene the Fifth Amendment rights of the individual defendants. *See id.* at 335.

In this case, Plaintiffs allege that "at all times pertinent to this action, the Defendant Marlin W. Brown was an owner, manager, and principal employee of the Defendant Roaring Fork Plumbing and Heating Company." (*See* Plaintiffs' Second Amended Complaint, ¶ 14.) Plaintiffs further allege that Roaring Fork's work on the premises giving rise to Plaintiffs' claims was done personally through its employee, Defendant Brown. (*See id.*, ¶¶ 76-77.) Therefore, as Defendant Brown has been "implicated in the alleged wrongdoing" in this matter as the principal of Roaring Fork, compelling Roaring Fork to file a responsive pleading and to undergo discovery would contravene the purposes of the Fifth Amendment, as Roaring Fork's knowledge as a corporate entity flows through its principal, Defendant Brown, which would again subject him to a "real and appreciable risk of self-incrimination." *See United States v. Kordel*, 397 U.S. 1, 8-9 (1970); *Paul Harrigan & Sons, Inc. v. Enterprise Animal Oil Co.*, 14 F.R.D. 333, 334-35 (E.D.P.A.1953). As such, this factor also weighs heavily in favor of a stay as to Defendant Roaring Fork.

Defendants Black Diamond and Thomas argue that the relief requested by Defendants Brown and Roaring Fork puts the other defendants in an unfair predicament, since it would force them to undergo discovery and defend themselves on liability without having any information or

documentation from a key party in the case. Specifically, Defendants Black Diamond and Thomas argue that because Brown is accused of installing the boiler that allegedly was the source of the carbon monoxide that killed the Lofgrens, and because Defendants Black Diamond and Thomas are accused of being vicariously liable for the conduct of Defendant Brown, forcing Defendants Black Diamond and Thomas to undergo discovery would be particularly inequitable to them. (Black Diamond's Resp. at 2.)

Similarly, Defendant HTP argues that, because Defendant Brown and Roaring Fork are the key defendants in this litigation, if the court were to stay litigation as to only Defendants Brown and Roaring Fork, the remaining defendants would be unfairly prejudiced because Defendants Brown and Roaring Fork have knowledge of facts and circumstances relating to the installation of the boiler that is unknown to any other party. (HTP's Resp. at 2-3.)

The court agrees with these arguments. Moreover, the court does not have to resolve the issue of whether the non-criminally-charged defendants would be prejudiced by the criminally-charged defendants' invocation of their Fifth Amendment rights, as the court finds it is more efficient to grant a complete stay as to all defendants rather than only a partial stay as to the individual ones. *See Transworld*, 886 F. Supp. at 1141. This court finds this factor weighs heavily in favor of a stay as to all defendants.

### C.     *Plaintiffs' Interests*

Plaintiffs, of course, have an interest in the "expeditious resolution" of their case. *Transworld*, 886 F. Supp. at 1140. Plaintiffs also contend that staying the case could harm its ability to recover from defendants. (Pls.' Resp. at 10-11.) The court recognizes that this is a

legitimate concern for all plaintiffs. Further, Plaintiffs argue, Plaintiff Dr. Fred Feuerbach, the father of Decedent Caroline Parker, is age 82, and Plaintiff Jean Rittenour, mother of Decedent Parker Lofgren, is age 69, and that the passing of either, or failing health, memory, or incapacity, could impact the damages recoverable. (Pls.' Resp. at 11-12.)  However, this argument is not particularly salient or persuasive, as Plaintiffs have not asserted that the aging plaintiffs are in poor health, and the concerns raised by these plaintiffs can apply to any plaintiff in any civil case.  The defendants have a significant interest in "avoiding the quandary of choosing between waiving their Fifth Amendment rights or effectively forfeiting the civil case." *Transworld*, 886 F. Supp. at 1140.  This important interest outweighs Plaintiffs' "legitimate interest in the expeditious resolution of their case." *Id.*

### D.   *Interests of the Court*

This factor does not weigh strongly either for or against a stay.  On the one hand, "[t]he Court has a strong interest in keeping litigation moving to conclusion without unnecessary delay." *In re CFS*, 256 F. Supp. 2d at 1241.  On the other hand, resolution of the criminal case may (1) increase the possibility of settlement of the civil case, and (2) "may reduce the scope of discovery in the civil case [as] the evidence gathered during the criminal prosecution can later be used in the civil action." *Transworld*, 886 F. Supp. at 1140.

### E.   *Public Interest*

Plaintiff argues that the public has an interest in the prompt resolution this case and that where, as here, the prosecuting attorney in the criminal case has taken no position as to the imposition of a stay, that mitigates in favor of denying the stay. (Resp. at 16 [citing *In re CFS*,

11

256 F. Supp. 2d at 1242].)  Plaintiffs also argue that "factors such as public health and safety" should be taken into consideration, and that "[a]ctivities of the CPSC in addressing CO deaths from gas–fueled boilers by urging design modification, may be adversely affected." (*Id.*) However, "[b]ecause of the overlapping issues in the criminal and civil cases, the criminal prosecution will serve to advance the public interests at stake here. " *Volmar Distributors, Inc. v. The New York Post Co., Inc.*, 152 F.R.D. 36, 40 (S.D.N.Y. 1993).

## CONCLUSION

After balancing the competing interests at stake in this case, the court finds that a stay of the case is appropriate.  Therefore, it is

**ORDERED** that "Defendants Marlin W. Brown and Roaring Fork Plumbing and Heating Company's Motion for Partial Stay of Proceedings and Motion for Protective Order" (Doc. No. 46) is GRANTED in part.  The case is STAYED, in its entirety, until the criminal proceedings are completed or until further order of the court.  Plaintiffs may move to vacate the stay if changes in circumstances so warrant.  It is further

**ORDERED** that Defendants Brown, Roaring Fork, Peltonen, and Pawl, the criminally-charged defendants, shall file quarterly status reports, beginning January 1, 2011, and continuing until further order of the court, regarding the status of the criminal cases against them.  It is further

**ORDERED** that all defendants are granted an extension of time, until further order of the court, to answer or otherwise respond to Plaintiffs' Second Amended Complaint.  It is further

**ORDERED** that the Scheduling Conference and all deadlines set forth in the Order Setting Rule 16(b) Scheduling Conference and Rule 26(f) Planning Meeting are VACATED, to be reset at a later time.

Dated this 20th day of December, 2010.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge