**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10–cv–02495–WJM–KMT

HILDA M., a/k/a HILDY, FEUERBACH, as Personal Representative of the Estates of
Parker W. Lofgren, deceased, and Caroline F. Lofgren, deceased,
JEAN RITTENOUR, as co-Personal Representative of the Estates of Owen P. Lofgren,
deceased, and Sophie J. Lofgren, deceased,
FREDERICK J. FEUERBACH, JR., as co-Personal Representative of the Estates of
Owen P. Lofgren, deceased, and Sophie J. Lofgren, deceased,
JEAN RITTENOUR, individually, and
FREDERICK J. FEUERBACH, JR., individually,

       Plaintiffs,

v.

MARLIN W. BROWN,
ROARING FORK PLUMBING AND HEATING COMPANY, a Colorado corporation,
BLACK DIAMOND LAND DEVELOPMENT CORPORATION, a Colorado corporation,
JONATHAN M. THOMAS,
INTEGRITY CONSTRUCTION MANAGEMENT GROUP, LLC, a/k/a ICM GROUP, LLC,
a Colorado Limited Liability Company,
JOHN H. WHEELER,
EAGLE AIR SYSTEMS, INC., a Colorado corporation,
PROGUARD PROTECTION SERVICES, INC., a Colorado corporation,
PRECISION MECHANICAL, INC., a Colorado corporation,
MYERS ENTERPRISES, LLC, a Colorado limited liability company,
HEAT TRANSFER PRODUCTS, INC., a Massachusetts corporation,
ERIK PELTONEN,
BRIAN PAWL,
PITKIN COUNTY COMMUNITY DEVELOPMENT DEPARTMENT, and
BOARD OF COUNTY COMMISSIONERS OF PITKIN COUNTY, COLORADO,

       Defendants.

---

**ORDER GRANTING PUBLIC DEFENDANTS' MOTION TO DISMISS,
DECLINING SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS,
AND REMANDING CASE TO DENVER DISTRICT COURT**

---

       This case arises out of the death of the Lofgren family due to carbon monoxide

exposure while they were staying in a home near Aspen, Colorado.  The

representatives of the Lofgrin family's estates bring this action against various individuals involved with installing and servicing the HVAC system and its associated components, as well as Pitkin County Board of County Commissioners and Pitkin County Community Development Department, who issued the certificate of occupancy, and Erik Peltonen and Brian Pawl who inspected the HVAC system on behalf of Pitkin County.  Collectively, Peltonen, Pawl, and the two County Defendants are referred to as the "Public Defendants".

The Second Amended Complaint brings eight causes of action, seven under Colorado state law and one claim under 42 U.S.C. § 1983 ("Section 1983") against the Public Defendants.  Before the Court is the Public Defendants' Motion to Dismiss arguing that the Second Amended Complaint fails to state a claim for relief under Section 1983.  (ECF No. 87.)  Because a number of the Defendants (including Peltonen and Pawl) have been indicted on criminal charges that are still pending in Pitkin County, this case has been stayed except for resolution of the instant Motion.

## I. <u>LEGAL STANDARD</u>

The Public Defendants move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Count Eight of the Second Amended Complaint.  When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the allegations of the complaint are sufficient to state a claim within the meaning of Fed. R. Civ. P. 8(a).  The Court must accept all well-pleaded allegations of the complaint as true.  *McDonald v. Kinder–Morgan, Inc.*, 287 F.3d 992, 997 (10th Cir. 2002). "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not

suffice to prevent a motion to dismiss." The complaint is reviewed to determine whether it "'contains enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007)).  "[T]he standard remains a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Twombly*, 127 S.Ct. at 1965) (internal quotation marks omitted).

## II. __FACTUAL BACKGROUND__

This recitation of facts contains only general background facts and those relevant to Count Eight—the Section 1983 claim.

Plaintiffs Jean Rittenour and Frederick Feuerbach are executors of the estates of Parker, Caroline, Owen, and Sophie Lofgren.  The Court will refer to the executors and the members of the Lofgren family collectively as "Plaintiffs".  Defendant Pitkin County Community Development Department ("Department"), a department of Defendant Pitkin County Board of Commissioners ("Board"), is responsible for the approval of residential construction projects, granting Building Permits, performing building inspections, issuing Certificates of Occupancy, and administering and enforcing the Pitkin County Building Code.  At all times relevant to this action, Defendant Erik Peltonen was a Building Inspector employed by the City of Aspen who, by inter-governmental agreement, performed building inspections for the Department.  Defendant Brian Pawl was a

3

Building Inspector employed by Pitkin County.

In 2003, the Board passed an ordinance adopting the International Residential Code, 2003 Edition, as part of the building requirements and Code of Pitkin County. Various provisions on indoor air quality were included in this Code, including a requirement that all homes have a hard-wired carbon monoxide detector before a Certificate of Occupancy could be issued.  (Second Am. Compl. ¶¶ 61-67, 112, 119.)

The same year, Black Diamond Land Development Corporation received a Building Permit from the Department to make alterations and additions to a property at 10 Popcorn Lane, known as the Lodge.  (*Id*. ¶¶ 70-71.)  In January 2005, Roaring Fork was hired to do mechanical and plumbing work on the Lodge.  The Department issued a mechanical permit to Roaring Fork for installation of a natural gas boiler.  (*Id*. ¶ 75.) Roaring Fork installed a Munchkin gas-fired hot water boiler to melt snow and provide hot water to the Lodge.  (*Id*. ¶ 77.)  Installation of the Munchkin boiler required an intake vent to provide fresh air from outside for combustion as well as an exhaust vent to remove the products of combustion from the residence.  (*Id*. ¶ 80.)  According to Plaintiffs, the design and installation of the intake and exhaust vents violated the manufacturer's instructions and warnings, the American National Standards, the International Residential Code, and the Pitkin County Code and building requirements. (*Id.* ¶¶ 81-96.)

In February 2005, the Department issued another mechanical permit to Eagle Air for purposes of installing an HVAC system.  (*Id*. ¶¶ 99-101.)  Eagle Air installed three gas forced-air furnaces, which were supposed to be supplied with fresh air through an

intake vent.  Improper installation of the vents and ductwork caused at least one of the furnaces to circulate air from the mechanical room—rather than fresh air from outside—throughout the Lodge.  (*Id*. ¶¶ 104-05.)  According to Plaintiffs, the improper design and installation of the HVAC system violated manufacturer's instructions, the International Residential Code, and Pitkin County's Building Code.  (*Id*. ¶ 106.)

On or about June 20, 2005, Peltonen performed various inspections of the mechanical work done by Roaring Fork and Eagle Air.  Pawl performed additional inspections on these systems on or about August 16, 2005.  (*Id*. ¶ 97.)  Open and obvious defects to both of these systems were present at the time of these inspections and there was no carbon monoxide detector installed in the home.  Despite these defects, the Lodge passed final inspection and either Peltonen or Pawl placed a tag on the gas line, which allowed the utility company to introduce natural gas service to the Lodge.  (*Id*. ¶¶ 111, 122.)  On or about June 1, 2006, the Department issued a Certificate of Occupancy for the Lodge.  (*Id*. ¶ 124.)

The Lofgren family and their friends the MacKenzie family purchased a stay at the Lodge in an auction at their children's school.  (*Id*. ¶¶ 39-43.)  The Lofgrens arrived at the Lodge on November 26, 2008 for their five day stay over the Thanksgiving holiday.  (*Id*. ¶ 45.)  On the evening of November 27, 2008, it began to snow causing the Munchkin boiler to start up.  (*Id*. ¶¶ 48-49.)  On November 28, 2008, the MacKenzie family arrived at the Lodge to find the Lofgren family dead inside one of the bedrooms.  (*Id*. ¶ 50.)  It was later determined that the Lofgren family had died from carbon monoxide poisoning caused by defects to the design and installation of the Munchkin

boiler and the HVAC system.  (*Id.* ¶¶ 51-60.)

Based on these facts, Plaintiffs bring eight causes of action against fifteen Defendants.  Seven of these causes of action arise out of Colorado state law and, due to the pendency of criminal charges against various entities in this case, these claims are all stayed.  (ECF No. 67.)  The only claim active in this case is Count Eight, which is the only federal claim.  (ECF No. 74.)

## III.  <u>ANALYSIS</u>

The Public Defendants move to dismiss Count Eight arguing that Plaintiffs have failed to state a claim for violation of their Due Process rights under 42 U.S.C. § 1983.  Peltonen and Pawl (collectively the "Individual Defendants") assert the defense of qualified immunity.  The Board and the Department (collectively "County Defendants") argue that they cannot be liable for a constitutional violation if the Individual Defendants are not found liable.  Each of these arguments will be addressed in turn below.

**A.     The Individual Defendants' Claims of Qualified Immunity**

The Individual Defendants assert qualified immunity against Plaintiffs' claims. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223 (2009) (quotation omitted).  To resolve qualified immunity claims, a court must consider two elements: (1) whether a constitutional violation occurred, and (2) whether the violated right was "clearly established" at the time of the violation.  *Id.* at 230-31.  The Court may "exercise [its] sound discretion in deciding

6

which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. at 236. "Qualified immunity is applicable unless the plaintiff can satisfy both prongs of the inquiry." *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009).

      1.    <u>Do Plaintiffs allege a constitutional violation?</u>

Plaintiffs allege that the Individual Defendants violated their substantive due process rights under the Fourteenth Amendment.  It is undisputed that the Individual Defendants did not personally kill the Lofgren family.  Rather, Plaintiffs allege that the Individual Defendants' lax inspections gave rise to a series of events that resulted in the deaths.

Generally, state actors are liable under the Due Process Clause only for their own direct actions and not responsible for the actions of private citizens.  *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995).  There are, however, two exceptions to this rule.  State officials may be subject to constitutional liability if they:  (1) create a danger that results in a harm to an individual, even if that harm is not ultimately inflicted by a state official; or (2) if the state has a "special relationship" with the individual who is harmed by the third party.  *Id*.  Neither party contends that the Individual Defendants had a special relationship with Plaintiffs.  Rather, Plaintiffs contend that the Individual Defendants are liable under the "danger creation" theory.

The "danger creation" theory provides that "a state may . . . be liable for an individual's safety if it created the danger that harmed the individual."  *Liebson v. New Mexico Corrections Dep't*, 73 F.3d 274, 276 (10th Cir. 1996).  To establish liability under

a "danger creation" theory, a plaintiff must prove that "(1) the charged state entity and the charged individual actors created the danger or increased plaintiff's vulnerability to the danger in some way; (2) plaintiff was a member of a limited and specifically definable group; (3) defendant's conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendant acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking."  *Currier v. Doran*, 242 F.3d 905, 918 (10th Cir. 2001). As discussed below, the Court finds the factual allegations in the Second Amended Complaint ("SAC") insufficient to meet at least two of these factors.

The SAC alleges that Peltonen performed an inspection of the mechanical work on June 20, 2005 and that Pawl performed an inspection on August 16, 2005.  (SAC ¶ 97.)  Plaintiffs allege that the "sole focus" of these inspections should have been on the Munchkin boiler, its gas line, and the venting system, and that the deficiencies in installation of these systems were "open and obvious" at the time of the inspections. (*Id*. ¶¶ 246-47.)  Plaintiffs allege that enforcing the Pitkin County building code was "mandatory and not discretionary" and that, by not performing sufficient inspections and clearly the Lodge after the Final Inspection—even with open and obvious code violations—the Individual Defendants created the danger encountered by the Lofgrin family.  (*Id*. ¶¶ 246-61.)

The Court finds that Plaintiffs have failed to satisfy the first prong of the danger creation test by alleging insufficient facts to show that the Individual Defendants created the danger or increased Plaintiffs' vulnerability to the danger that resulted in their deaths.  To create a danger for purposes of Section 1983, "the conduct should be

8

directed at a discrete plaintiff rather than at the public at large." *Ruiz v. McDonnell*, 299
F.3d 1173, 1183 (10th Cir. 2002).   The Individual Defendants' conduct in this
case—performing inspections and approving the Lodge for occupation—was directed at
the public at large rather than Plaintiffs in particular.   *See id.* (holding that licensing an
establishment after inspections is an action directed at the public at large).   As such,
Plaintiffs have failed to show that the Public Defendants created a danger particular to
them or increased their vulnerability to a danger and have thus failed to satisfy the first
prong of the danger creation standard.   *See also Sutton v. Utah State Sch. For Deaf
and Blind*, 173 F.3d 1226, 1237 (10th Cir. 1999) (holding a plaintiff danger creation
claim failed as a matter of law because the named defendant did not "affirmatively act
so as to create or enhance the danger" to the particular plaintiff).

The Court further finds that the Plaintiffs have not alleged conduct by the
Individual Defendants that placed them at substantial risk of immediate harm.   The
Tenth Circuit has held that "[a]ffirmative conduct for purposes of § 1983 should typically
involve conduct that imposes an immediate threat of harm, which by its nature has a
limited range and duration."   *Ruiz*, 299 F.3d at 1183.   The Individual Defendants
performed the disputed inspections more than three years prior to Plaintiffs' deaths.
The Certificate of Occupancy was issued the summer of 2006 which means that it is
likely that the boiler and HVAC system at the Lodge were used for two winters without
any harm befalling another occupant.   Thus, any harm caused by the Defendants'
perfunctory inspections was not "immediate" for purposes of Section 1983, and the
SAC fails to satisfy the third prong of the danger creation test.   *See Ruiz*, 299 F.3d at

9

1183 (licensing a daycare facility created "a theat of indefinite range and duration" that was insufficient to satisfy the Substantive Due Process standard).[1]

Because Plaintiffs have failed to allege sufficient facts to show that the Individual Defendants created the danger that resulted in the deaths at issue here, they have failed to state a claim for relief for violation of the Due Process Clause.

2.    Was any constitutional violation clearly established?

As discussed above, the Court finds that the SAC does not allege facts showing that Peltonen and/or Pawl violated Plaintiffs' constitutional rights.  However, even if the Court were to assume that such a violation had occurred, Plaintiffs would be entitled to pursue their claim only if such constitutional violation was clearly established at the time of Defendants' actions.

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010) (quotation omitted).  However, Plaintiffs need not show that a court had already decided the precise issue in question here.  The Supreme Court has held that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful."  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (quotations

---

[1]  Given its ruling on the first and third prongs of the *Currier* test, the Court need not and does not address whether Plaintiffs have in this case satisfied any of the other prongs of the danger creation theory.

10

and alteration omitted).  The Tenth Circuit has observed that "[t]he *Hope* decision shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional."  *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) (quotations omitted).

Under Tenth Circuit law, the Individual Defendants would not have been on fair notice that their actions could result in liability under the Due Process Clause.  The Tenth Circuit has repeatedly refused to extend the danger creation theory of liability to situations involving state-performed inspections and licensing.  *See Robbins v. Oklahoma*, 519 F.3d 1242, 1252 (10th Cir. 2008) (act of licensing daycare did not create danger for purposes of claim under the Due Process Clause); *Ruiz*, 299 F.3d at 1183 (licensing state daycare facility did not support claim for danger creation theory).  Plaintiffs argue that the *Currier* case should have put the Individual Defendants on notice that their acts violated the constitution.  The Court finds *Currier* distinguishable from the instant action because it involved a state employee that affirmatively withheld information from the appropriate authorities and repeatedly failed to investigate known risks.  There is no similar allegation against the Individual Defendants in this case.  Thus, the Court finds that there is no Tenth Circuit precedent that would have put the Individual Defendants on fair notice of the fact that their actions violated the Due Process Clause.

Moreover, Plaintiffs have failed to show that the clearly established weight of authority from other jurisdictions would serve to put the Individual Defendants on notice

that their actions violated the constitution.  Plaintiffs cite a number of cases attributing fault to individuals who were responsible for performing inspections or ensuring compliance with the building code.  However, all of these cases involve state law negligence claims.  *See Waite v. Whatcom County*, 775 P.2d 967, 969-70 (Wash. Ct. App. 1989) (for purposes of Washington state law negligence claim, inspector owed duty to occupants of house to adequately inspect heating system); *Garrett v. Holiday Inn*, 58 N.Y.2d 253, 262 (N.Y. App. 1983) (by licensing premises as safe, town owed duty to public sufficient to satisfy New York state law negligence claim); *Wilson v. Nepstad*, 282 N.W.2d 664, 673 (Iowa 1979) (issuance of certificate of occupancy created duty for purposes of a negligence claim under Iowa law); *Adams v. Alaska*, 555 P.2d 235, 240 (1976) (state inspectors had duty to investigate known hazards, failure to do so subjected them to liability on a state law negligence claim).  The legal standard for a state law negligence claim is far different from that for a violation of the Substantive Due Process Clause.  *See County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."); *Daniels v. Williams*, 474 U.S. 327, 332 (1986) (holding that the Due Process Clause was not intended to supplant negligence claims simply because an injury involved a state actor).

Plaintiffs have failed to cite any federal court decisions holding that an allegedly inadequate building inspection formed the basis for a substantive due process claim.  In fact, the federal cases with most similar facts have uniformly held that the state inspector or agency did not violate the Due Process Clause.  *See, e.g., Assoko v. City*

*of New York*, 539 F.Supp.2d 728, 739-40 (S.D.N.Y. 2008) (wrongful issuance of

certificate of occupancy does not give rise to constitutional claim); *Hill v. San Francisco*

*Housing Authority*, 207 F. Supp. 2d 1021, 1029 (N.D. Cal. 2002) (state did not create

danger by serving as landlord for premises); *Crosby v. Luzerne County Housing*

*Authority*, 739 F. Supp. 951, 955-56 (M.D. Penn. 1990) (plaintiff's allegations that

defendants did not adequately inspect building before approving it for HUD occupancy

failed to state a Due Process claim); *Baugh v. City of Milwaukee*, 1989 WL 69879, *2

(E.D. Wisc. March 8, 1989) (city was not liable for fire even though building had been

inadequately inspected only weeks before).

Because Plaintiffs have failed to show that the Individual Defendants' actions

violated clearly established federal law, Defendants Peltonen and Pawl are entitled to

qualified immunity.  Accordingly, Plaintiffs' Section 1983 claims against Defendants

Peltonen and Pawl must be dismissed.

**B.      Liability of the County Defendants**

Plaintiffs bring a claim against the County Defendants alleging that they failed to

adequately supervise the Individual Defendants, had inadequate policies, practices, and

customs, and knowingly approved of a pattern of nonenforcement of its building codes.

(Am. Compl. ¶¶ 266-270.)

To the extent Plaintiffs allege that, by issuing the certificate of occupancy for the

Lodge, the County Defendants affirmatively created the danger that resulted in

Plaintiffs' death, the analysis set forth above applies.  Any risk arguably created by the

County Defendants through the issuance of the certificate of occupancy was directed at

the public in general rather than specifically at the Plaintiffs.  Moreover, as Plaintiffs' deaths occurred more than two years after the certificate of occupancy was issued, any danger created was not immediate.  Accordingly, Plaintiffs have failed to state any direct liability (as opposed to supervisory liability) claims against the County Defendants.

Plaintiffs also allege that the County Defendants failed to adequately train their employees.  To succeed on a failure to train claim against a supervisor, a plaintiff must show that the employee who was supervised committed a constitutional violation. *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1322 (10th Cir. 2009) (granting summary judgment to county on failure to train claim because plaintiff had failed to show that the individual police officers violated his constitutional rights).  Because, as discussed above, Plaintiffs have failed to show that the Individual Defendants violated the Due Process Clause, their failure to train claim against the County Defendants must be dismissed.

Plaintiffs also allege that the County Defendants had an unconstitutional policy, practice, or custom of granting certificates of occupancy despite inadequate inspections.  (Am. Compl. ¶ 267.)  The touchstone of this claim is that some official policy is responsible for a deprivation of rights protected by the Constitution. *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978).  That policy may be embodied in an official enactment or may be reflected in "governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Id.* at 691.

Plaintiffs have not alleged that any "official enactment" by the County Defendants

-14-

violated their Due Process rights.  Rather, the allegation is that the County Defendants'

custom of knowingly approving of the non-enforcement or selective enforcement of

building codes deprived Plaintiffs of their Due Process rights.  The Tenth Circuit has set

forth a three-part test for determining when a governmental entity is liable for an

unofficial custom:

> To establish a case based on custom, a plaintiff must prove:
>
> (1) The existence of a continuing, persistent and widespread practice of unconstitutional misconduct by the . . . [municipality's] employees;
>
> (2) Deliberate indifference to or tacit approval such misconduct by the . . . [municipality's] policymaking officials . . . after notice to the officials of that particular misconduct;
>
> and
>
> (3) That the plaintiff was injured by virtue of the unconstitutional acts pursuant to the . . . [municipality's] custom and that the custom was the moving force behind the unconstitutional acts.

*Gates v. Unified School Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993).

The allegations in the SAC fall short of meeting this standard.  The alleged

misconduct here is lax building inspections and selective enforcement of building

codes.  Assuming that these practices existed, Plaintiffs have not alleged any facts

showing that the County Defendants had notice that they were occuring.  Because

knowledge is difficult to prove, in some circumstances, the Court can impute knowledge

to a governmental entity.  However, to do so, the plaintiff must show that

unconstitutional misconduct was "so widespread or flagrant that in the proper exercise

of its official responsibilities the governing body should have known of it."  *Jojola v.*

*Chavez*, 55 F.3d 488, 491 (10th Cir. 1995).  The SAC does not include any other

examples of building code violations that were ignored by the County Defendants.

*Compare Cannon v. City and County of Denver*, 998 F.2d 867, 878 (10th Cir. 1993)

(where plaintiffs had produced evidence of several constitutional violations, it could be

inferred that the County was deliberately indifferent to plaintiffs' constitutional rights);

*Jojola v. Chavez*, 55 F.3d 488, 491 (10th Cir. 1995) (knowledge of and acquiescence to

unconstitutional conduct could be inferred from evidence of four other similar incidents).

Thus, the Court finds that Plaintiffs have failed to allege sufficient facts showing that the

County Defendants are liable based on an unconstitutional custom.

Having found that Plaintiffs' claim against the County Defendants fail to state a

claim upon which relief could be granted, these claims must be dismissed.

## C.     Supplemental Jurisdiction Over the Remaining State Law Claims

Though the issue has not been raised by any party, the Court has an

independent duty to examine its jurisdiction at every stage of the litigation.

*Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  This case was removed to

federal court because Count Eight—the Section 1983 claim—alleged a violation of

federal law.  (ECF No. 1.)  Because the Court had original jurisdiction over Count Eight,

it had supplemental jurisdiction over the remaining seven counts.  28 U.S.C. § 1367.

The Court has now dismissed Count Eight in its entirety.  Plaintiffs' seven remaining

claims are all grounded in state law.  A federal court does not have independent

jurisdiction over state law claims unless those state law claims "turn on substantial

questions of federal law."  *Grable & Sons Metal Products, Inc. v. Darue*, 545 U.S. 308,

312 (2005).  None of the state law claims at issue in this case turn on questions of federal law.

Federal supplemental subject matter jurisdiction over state law claims "is extended at the discretion of the court and is not a plaintiff's right."  *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).  "[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims."  *Carnegie–Mellon Univ.*, 484 U.S. at 350.  In the interest of comity and federalism, district courts are advised against making "needless decisions of state law." *TV Commc'ns Network, Inc.*, 964 F.2d at 1028.  If federal claims are dismissed before trial, leaving only issues of state law, the federal district court should ordinarily decline to exercise supplemental jurisdiction by dismissing the case without prejudice.  *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (citing *Carnegie–Mellon Univ.*, 484 U.S. at 350).

The instant suit is not yet at trial, so issues of judicial economy and fairness are not implicated here.  *See, Carnegie–Mellon Univ.,* 484 U.S. at 350.  Rather, the issues of comity and federalism are at the forefront, because the Court would have to decide matters of state law if it continued to exercise jurisdiction over Plaintiffs' remaining claims.  *See McWilliams v. Jefferson County*, 463 F.3d 1113, 1117 (10th Cir. 2006). "Notions of comity and federalism demand that a state court try its own lawsuits, absent

compelling reasons to the contrary." *Thatcher Enters. v. Cache County Corp.*, 902 F.2d

1472, 1478 (10th Cir. 1990).  The remaining seven causes of action either arise out of

Colorado statutes or are grounded in Colorado common law; no federal laws are

implicated by these claims.  Thus, there is not a compelling reason to maintain

jurisdiction over this suit.

The Court finds that the remaining claims would be better addressed in state

court. *See, Gaenzle*, 614 F.3d at 1229; *TV Commc'ns Network, Inc.*, 964 F.2d at 1028;

*Thatcher Enters.*, 902 F.2d at 1478.  Accordingly, the Court declines to exercise its

supplemental jurisdiction over the remaining claims and will remand this case to the

Denver District Court.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The Public Defendants' Motion to Dismiss is GRANTED;

2. Plaintiffs' Section 1983 claims against Defendants Peltonen, Pawl, Pitkin County

   Board of Commissioners, and Pitkin County Community Development

   Department are DISMISSED WITH PREJUDICE;

3. The Court DECLINES to exercise its supplemental jurisdiction over Plaintiffs'

   remaining state law claims; and

4. The above-captioned action is REMANDED to Denver District Court.  The Clerk

   shall transmit the record.

Dated this 2nd day of November, 2011.

BY THE COURT:

_____
William J. Martínez
United States District Judge